*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A16-0111**

State of Minnesota,
Respondent,

vs.

Corey James Fordham,
Appellant.

**Filed January 17, 2017**
**Affirmed**
**Schellhas, Judge**

Kandiyohi County District Court
File No. 34-CR-14-1089

Lori Swanson, Attorney General, Karen B. McGillic, Assistant Attorney General, St. Paul, Minnesota; and

Shane Becker, Kandiyohi County Attorney, Willmar, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Cleary, Chief Judge; and

Ross, Judge.

**SCHELLHAS**, Judge

Appellant challenges his conviction of third-degree criminal sexual conduct, arguing that he proved the mistake-of-age affirmative defense and that the evidence therefore is insufficient to support the conviction. We affirm.

## FACTS

A jury found appellant Corey Fordham guilty of third-degree criminal sexual conduct (sexual penetration with another who is at least 13, but under 16, when the actor is more than 24 months older than the other person). Fordham admits that, at age 20, he had sexual intercourse with J.J., who was age 15. Fordham maintains that he reasonably believed J.J. was age 16 at the time.

The evidence at trial revealed that, after J.J. notified Fordham by telephone that she had left her foster home, he picked her up in his vehicle sometime after midnight and brought her to his mother's home, where he lived. Fordham and J.J. slept for a time and then had sexual intercourse the same day, after Fordham's mother left for work. The testimony was conflicting about when Fordham learned J.J.'s true age. J.J. testified that she never lied to Fordham or anyone else about her age and that she told Fordham her age and school grade about a week after they met. She also testified that she met Fordham's mother upon her arrival at Fordham's home on August 31, 2014, and that Fordham's mother did not ask J.J. her age until later that day, after Fordham had engaged in sexual intercourse with her. J.J. also testified that, when she and Fordham later visited his half-sister, she told the half-sister that she was 15 years old, which did not seem to surprise Fordham.

Fordham testified that he was in high school when he met J.J., and that they talked about the schools they were in but never discussed their specific ages. He claimed that as soon as he and J.J. arrived at his home on August 31, 2014, his mother asked J.J. her age, and J.J. said that she was 18 but did not have an I.D. to prove it. Fordham claimed that he asked J.J. why she lied to his mom about her age and that she then told him that she was 16. Fordham also testified that after he and J.J. had sexual intercourse, they met his sister-in-law, who asked J.J. her age, and that J.J. initially said she was 18. Because his sister-in-law did not believe J.J., J.J. confessed to being 15. Fordham testified that he was upset when he learned that J.J. was 15. But a sheriff's detective testified that, on September 25, 2014, when she asked Fordham how old he thought J.J. was on that date, Fordham said he thought that she was 16 years old because she was a sophomore in high school.

Fordham's mother testified that upon meeting J.J. on August 31, 2014, she asked J.J. her age, and that J.J. said she was 18. And Fordham's half-sister testified that she met J.J. at her mother's home on the afternoon of August 31, 2014, that her mother asked J.J. her age at that time, and that J.J. said she was 18 but did not have her driver's license to prove her age.

A mutual friend of J.J.'s and Fordham's testified that she was present when J.J. and Fordham first met while in a concession line at a high-school football game. At that time, the mutual friend was in high school, J.J. was in middle school, and the friend and Fordham were dating. After meeting J.J., Fordham told the mutual friend that he thought that J.J. was cute and sexy, which caused the friend to tell Fordham that J.J. was in middle school

3

in the seventh grade, because she thought Fordham already had graduated from high school at the time. The friend noted that Fordham "didn't really seem to care."

This appeal follows.

## DECISION

Arguing that he met his burden of proving the affirmative defense of mistake of age, Fordham challenges his conviction of third-degree criminal sexual conduct in violation of Minn. Stat. § 609.344, subd. 1(b) (2014). One element of that crime is that the alleged victim of the crime was at least 13 years old, but less than 16, and that the defendant was more than 24 months older than the alleged victim. *See* Minn. Stat. § 609.344, subd. 1(b). A reasonable belief that the victim was 16 years old or older at the time of the sexual penetration is an affirmative defense. *See id.* Proving the mistake-of-age affirmative defense negates that element, resulting in insufficient evidence to support a conviction. *See id.*

Fordham does not dispute that he was more than 24 months older than J.J. Rather, Fordham argues that the evidence is insufficient to support his conviction because he proved by a preponderance of the evidence that he reasonably believed J.J. was 16 when he engaged in sexual intercourse with her. To determine the sufficiency of the evidence, we must consider whether the evidence was sufficient to establish the mistake-of-age affirmative defense. *See State v. Kramer*, 668 N.W.2d 32, 37 (Minn. App. 2003) (stating that question of whether affirmative defense of mistake of age was proved by a preponderance of the evidence "is akin to a challenge to the sufficiency of the evidence"), *review denied* (Minn. Nov. 18, 2003).

4

Our review "is limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the verdict, is sufficient to allow the jurors to reach the verdict that they did." *State v. Caldwell*, 803 N.W.2d 373, 384 (Minn. 2011). In our review, "we must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary." *Id.* (quotation omitted). This assumption is especially significant when "resolution of the case depends on conflicting testimony, as it is the function of the jury to evaluate the credibility of the witnesses." *State v. Pippitt*, 645 N.W.2d 87, 92 (Minn. 2002). A reviewing court will not disturb the jury's verdict if the jury, "upon application of the presumption of innocence and the State's burden of proving an offense beyond a reasonable doubt, could reasonably have found the defendant guilty of the charged offense." *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015).

Having raised the affirmative defense of mistake of age, Fordham had the burden of proving that it was more likely than not that he believed J.J. was 16 years old at the time of the sexual encounter. *Kramer*, 668 N.W.2d at 37. Fordham claims that he reasonably believed J.J. was 16 because she was friends with older people, she had been introduced to him by J.J.'s older friend, and she had liquor with her when she got into Fordham's car on August 31, 2014. He also claims that he made a reasonable mistake about J.J.'s age because she told him she was age 16 before the sexual intercourse. If the jury believed Fordham's testimony, the jury could have reasonably found that Fordham had proved that it was more

likely than not that he was mistaken about J.J.'s age. But the witnesses' testimony at trial was conflicting about what J.J. said about her age, when she said it, and to whom.

The case depended entirely on what testimony the jury believed. "[I]t is the function of the jury to evaluate the credibility of the witnesses." *Pippitt*, 645 N.W.2d at 92. When, as here, the evidence was in conflict, the jury had to resolve the conflict and could do so by weighing the credibility of witnesses. *Id.* at 94; *see also State v. Pendleton*, 706 N.W.2d 500, 512 (Minn. 2005) (stating that "[e]ven where witness credibility has been challenged, the jury may nonetheless believe the witness").

The evidence supporting Fordham's mistake-of-age affirmative defense consisted of the testimony of Fordham and his family members, some of which was inconsistent in detail. The jury had to assess that testimony in light of all other witnesses' contradictory testimony. Considering all the evidence, we conclude that nothing in this record suggests that the jury improperly credited the state's witnesses in its rejection of Fordham's defense. The evidence is sufficient to support Fordham's conviction.

**Affirmed.**